[No. 28995-4-II.   Division Two.   June 15, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT DEAN DOWNING, JR., *Appellant*.

*Peter B. Tiller* (of *Rock & Fine*), for appellant.

*Jeremy R. Randolph, Prosecuting Attorney*, and *Brandy M. Meyer, Deputy*, for respondent.

QUINN-BRINTNALL, C.J. — Following a stipulated facts bench trial, Robert Downing, Jr., was convicted of bail jumping based on his failure to appear for arraignment on charges of unlawful issuance of bank checks (UIBC). Downing appeals the bail jumping conviction, arguing that double jeopardy and the mandatory joinder rule rendered the underlying UIBC charges invalid at the time of the missed court appearance. He also claims ineffective assistance based on his counsel's failure to raise mandatory joinder. We disagree and affirm.

## FACTS

Downing passed a series of bad checks in March and April of 2001. In December 2001 and February 2002, he was charged by citation in Mossyrock District Court with UIBC under RCW 9A.56.060. Each of the four citations listed a date and location of issuance, but not the check numbers of the bad checks.[1]

---

[1] The citations, the first three issued December 17, 2001, and the fourth on February 3, 2002, listed only the dates and locations of the crimes as follows:

| No. 1535: | 254 East State Street, Mossyrock, Lewis County, on or about 03-05-01 |
| No. 1536: | 748 Williams Street, Mossyrock, Lewis County, on or about 03-11-01 |
| No. 1537: | 221 East State Street, Mossyrock, Lewis County, on or about 04-15-01 |

Meanwhile, the Lewis County prosecutor filed three counts of UIBC against Downing on February 5, 2002, in the superior court. The charging document alleged the same time period as the district court citations but listed specific check numbers.

On March 1, 2002, Downing appeared in superior court without counsel. The court continued the hearing for two weeks to allow Downing to hire an attorney. Downing signed an order setting conditions of release, including a condition that he return to court on March 14, 2002.

Downing pleaded guilty to the four citations in district court on March 13, 2002. Again, the statement of defendant on plea of guilty listed the dates of the checks, but not the check numbers.

Downing failed to appear as he agreed for the continued superior court hearing the next day, March 14. The superior court issued a bench warrant, and on March 21, the State filed an amended information, adding the bail jumping charge.

On March 28, Downing appeared in custody at superior court for arraignment and trial setting.

On April 1, the district court entered amended judgment and sentence orders to establish the amount of restitution Downing owed. (The first judgment and sentence had ordered that he pay an amount "to be determined." Clerk's Papers (CP) at 46.) The documents ordered restitution on eight specific checks, listing the check numbers for each. The dates of these checks did not all match the dates of the citations.[2]

---

No. 1549:  254 East State Street, Mossyrock, Lewis County, on or about 04-11-01

[2] *Compare* CP at 47-54 (district court's April 1, 2002 "Amendment to Judgment and Sentence") *with* CP at 27-30 (December 2001 and February 2002 district court citations). In its sentencing amendment, the district court ordered restitution on eight checks to three different businesses. It ordered restitution to Smith & Son Grocery, 254 East State Street, Mossyrock, for the following checks:

| 1445 | $36.91 | 3-5-2001 |
| 1483 | $50.00 | 3-22-2001 |

At the June 14 superior court bench trial, Downing, now represented by counsel, moved to dismiss under the double jeopardy clause, claiming the superior court information alleged the same charges as the district court citations. Downing argued that he pleaded guilty to passing the checks listed in the amended restitution order. The State conceded that Downing pleaded to the checks alleged in Counts II and III, and the court dismissed those charges. The State did not concede Count I and instead argued that Downing agreed only to pay restitution for the checks, but he was never charged with nor did he plead guilty to issuing the checks. Nonetheless, the State moved to dismiss Count I because Downing had already been ordered to pay restitution.

In the end, the court dismissed all three UIBC counts: two on double jeopardy grounds and the third on the State's motion. Downing then moved to dismiss Count IV, bail jumping, arguing that the underlying charges had been dismissed. The judge denied the motion and found Downing guilty of bail jumping. He appeals.

## ANALYSIS

### (1) MANDATORY JOINDER AND INEFFECTIVE ASSISTANCE

Downing first contends that his counsel should have moved to dismiss Count I under the mandatory joinder rules and that failure to do so constituted ineffective assistance. This argument is crucial to Downing's ultimate

| 1485 | $70.28 | 4-1-2001 |
| 1455 | $58.17 | 4-8-2001 |
| 1456 | $69.58 | 4-9-2001 |
| 1457 | $65.00 | 4-10-2001 |

CP at 47. To Mossy Mini Mart, 221 Blankenship Road, Mossyrock, the court ordered restitution on one check:

| 1449 | $25.91 | 3-11-2001 |

CP at 51. Finally, to Mossyrock Market, 221 East State Street, Mossyrock, the court ordered restitution on one check:

| 1462 | $39.07 | 4-15-2001. |

CP at 54.

argument that none of the underlying charges was valid and that his conviction for bail jumping cannot stand.

■ CrR 4.3.1 requires mandatory joinder where the crimes are "related offenses." CrR 4.3.1(b); *State v. Lee*, 132 Wn.2d 498, 501, 939 P.2d 1223 (1997). Offenses are "related" under the rule "if they are within the jurisdiction and venue of the same court and are based on the same conduct." CrR 4.3.1(b)(1); *Lee*, 132 Wn.2d at 501.

In *Lee*, the defendant was charged with criminal trespass and second degree theft of rent after he fixed up a house and collected rent from prospective tenants, when he did not own the house and did not have the permission of the house's owner. 132 Wn.2d at 500. Lee was subsequently charged with theft for collecting rent and deposits but failing to provide promised housing to different victims. *Lee*, 132 Wn.2d at 500. He moved successfully to dismiss the second case under the mandatory joinder rule. *Lee*, 132 Wn.2d at 501. But our Supreme Court reversed, explaining that "same conduct" for purposes of deciding which offenses are "related offenses" and therefore subject to mandatory joinder, is conduct involving "a single criminal incident or episode." *Lee*, 132 Wn.2d at 503. The court included as examples

> offenses based upon the same physical act or omission or same series of physical acts. Close temporal or geographic proximity of the offenses will often be present; however, a series of acts constituting the same criminal episode could span a period of time and involve more than one place, such as one continuous criminal episode involving a robbery, kidnapping, and assault on one victim occurring over many hours or even days.

*Lee*, 132 Wn.2d at 503-04. But the court held that Lee's conduct did not qualify. The court explained that the fact a series of crimes is part of a common plan does not necessarily mean that joinder is mandatory; instead, *"permissive joinder* is authorized where offenses are based upon a series of acts constituting a single scheme or plan." *Lee*, 132 Wn.2d at 504.

The present case does not clearly fall under the mandatory joinder rule, as do some cases that are based on the same conduct, such as *State v. Dallas*, 126 Wn.2d 324, 329, 892 P.2d 1082 (1995) (holding theft and possession of stolen property were related charges since based on the same conduct); *State v. Anderson*, 96 Wn.2d 739, 638 P.2d 1205 (holding mandatory joinder required dismissal of second charge of first degree premeditated murder, after first conviction for premeditated murder under "extreme indifference" was overturned as an inappropriate charge), *cert. denied*, 459 U.S. 842 (1982); and *State v. Holt*, 36 Wn. App. 224, 228, 673 P.2d 627 (1983) (holding that the charges in two possession of pornography cases were the same conduct because the charges were the same, the kind of material allegedly illegally possessed was the same, and the date of possession was the same). Nor does this case fall squarely under the permissive joinder cases, where the conduct is clearly not the same. *See, e.g., State v. Watson*, 146 Wn.2d 947, 957, 51 P.3d 66 (2002) (holding mandatory joinder not required when juvenile charged with fourth degree assault in one case and taking a motor vehicle without permission in another case); *State v. Bradley*, 38 Wn. App. 597, 687 P.2d 856 (holding that possession of marijuana and attempting to elude a police officer do not arise from the same conduct), *review denied*, 102 Wn.2d 1024 (1984).

■ Here, the victim was the same in Count I of the information and in the district court citations. But joinder was not mandatory because the charges involved different checks issued on different dates and because one crime was completed before the next began. Thus, even if Downing's counsel had moved to dismiss under the mandatory joinder rule, the court should have denied his motion.[3] Downing's

---

[3] Furthermore, because Downing entered a guilty plea on the district court charges, he would have been unable to obtain dismissal. *See* CrR 4.3.1(b)(4):

> Entry of a plea of guilty to one offense does not bar the subsequent prose- cution of a related offense unless the plea of guilty was entered on the basis of a plea agreement in which the prosecuting attorney agreed to seek or

counsel was not ineffective for failing to move to dismiss Count I.

## (2) Bail Jumping When Underlying Charges Dismissed

Downing next contends that his bail jumping conviction cannot stand because the court dismissed all the underlying UIBC charges.

■ The elements of bail jumping are satisfied if the defendant (1) was held for, charged with, or convicted of a particular crime; (2) had knowledge of the requirement of a subsequent personal appearance; and (3) failed to appear as required. RCW 9A.76.170.[4] Under the statute, the defendant must fail to appear on the matter for which he was held, charged, or convicted. And Downing was charged with three counts of UIBC at the time he failed to appear under

---

not to oppose dismissal of other related charges or not to prosecute other potential related charges.

And finally, a determination would have to be made as to whether the prosecutor knew of all charges, considering this case involves district and superior court charges. See CrR 4.3.1(b)(3) (charges are to be dismissed "unless the court determines that . . . the prosecuting attorney was unaware of the facts constituting the related offense or did not have sufficient evidence to warrant trying this offense at the time of the first trial").

[4] That statute provides:

(1) Any person having been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state, or of the requirement to report to a correctional facility for service of sentence, and who fails to appear or who fails to surrender for service of sentence as required is guilty of bail jumping.

(2) It is an affirmative defense to a prosecution under this section that uncontrollable circumstances prevented the person from appearing or surrendering, and that the person did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender, and that the person appeared or surrendered as soon as such circumstances ceased to exist.

(3) Bail jumping is:

(a) A class A felony if the person was held for, charged with, or convicted of murder in the first degree;

(b) A class B felony if the person was held for, charged with, or convicted of a class A felony other than murder in the first degree;

(c) A class C felony if the person was held for, charged with, or convicted of a class B or class C felony;

(d) A misdemeanor if the person was held for, charged with, or convicted of a gross misdemeanor or misdemeanor.

RCW 9A.76.170.

the trial court's order. Thus, the trial court correctly found that Downing jumped bail. But Downing argues that there is an additional, implied requirement that the charge underlying the bail jumping charge must be valid at the time the defendant failed to appear.

There is no serious dispute that the superior court had jurisdiction over the UIBC charges. Indeed, the fact that the court later dismissed the charges does not mean that it lacked jurisdiction to order Downing to appear and answer for those charges, even if his answer could have been that double jeopardy barred further prosecution. We have rejected Downing's argument that Count I would have been dismissed under mandatory joinder but for his counsel's failure to move to dismiss. But even if we were to find Downing's prosecution on Count I invalid on other nonjurisdictional grounds, Downing's argument still fails.

No Washington cases squarely address whether the charge underlying an allegation of bail jumping must be valid. But we find the issue sufficiently analogous to charges of escape. In such cases, our courts have rejected arguments that the invalidity of the underlying conviction is a defense to the crime of escape. In a prosecution for first degree escape, the State is not required to prove that a defendant was detained under a constitutionally valid conviction. *See State v. Hall*, 104 Wn.2d 486, 491, 706 P.2d 1074 (1985); *State v. Gonzales*, 103 Wn.2d 564, 567, 693 P.2d 119 (1985). Accordingly, we reject Downing's argument that the validity of the underlying offense is an implied element of the crime of bail jumping.

(3) AMENDING THE INFORMATION

Finally, Downing contends that the information was constitutionally inadequate because it listed an incorrect date for the bail jumping offense.

Moments before the trial court made its ruling finding Downing guilty of bail jumping, the State moved to amend the information to correct the date of the alleged bail jump from February 22 to March 14. Over Downing's objection,

the court permitted the amendment, observing that "[i]t's apparent to me that everybody was dealing with the March 14 date." Report of Proceedings (June 14, 2002) at 23.

Other divisions of this court have held that amending the date of the charged offense in a charging document is a matter of form rather than substance "and should be allowed absent an alibi defense or a showing of other substantial prejudice to the defendant." *State v. DeBolt*, 61 Wn. App. 58, 62, 808 P.2d 794 (1991). In *DeBolt*, the court amended the information after the State had rested and defendant had testified. 61 Wn. App. at 59. *See also State v. Allyn*, 40 Wn. App. 27, 35, 696 P.2d 45, *review denied*, 103 Wn.2d 1039 (1985).

Here, it appears that everyone knew the date in question, and Downing does not allege on appeal that he was prejudiced by the amendment.

(4) FEES AND COSTS

We grant the State's request for taxable costs under RAP 14.2, 14.3, RCW 10.73.160, and *State v. Blank*, 131 Wn.2d 230, 251, 930 P.2d 1213 (1997). The State is not required to comply with RAP 18.1.

Affirmed.

BRIDGEWATER and ARMSTRONG, JJ., concur.

Review denied at 153 Wn.2d 1014 (2005).